RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0066p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

ROGER L. WHEELER,

    *Petitioner-Appellant*,

    *v.*

THOMAS L. SIMPSON, Warden,

    *Respondent-Appellee*.

No. 11-5707

---

On Remand from the United States Supreme Court.
No. 3:09-cv-00336—Joseph H. McKinley Jr., Chief District Judge.

Argued: October 1, 2014

Decided and Filed: March 23, 2017

Before: MERRITT, GRIFFIN, and WHITE, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Joseph T. Flood, SHELDON, FLOOD & HAYWOOD, PLC, Fairfax, Virginia, for Appellant. David W. Barr, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee. **ON BRIEF:** Joseph T. Flood, SHELDON, FLOOD & HAYWOOD, PLC, Fairfax, Virginia, David M. Barron, KENTUCKY DEPARTMENT OF PUBLIC ADVOCACY, Frankfort, Kentucky, for Appellant. David W. Barr, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee.

    GRIFFIN, J., delivered the opinion of the court in which MERRITT and WHITE, JJ., joined. MERRITT, J. (pg. 15), delivered a separate concurring opinion.

---

**OPINION**

---

GRIFFIN, Circuit Judge.   This habeas case returns to us on remand from the Supreme Court.  Previously, this court granted habeas relief to petitioner Roger Wheeler based on the state trial court's decision to remove a juror who could not give sufficient assurance of neutrality or impartiality in considering whether to impose the death penalty.  *See Wheeler v. Simpson*, 779 F.3d 366, 374–75 (6th Cir.), *rev'd sub nom. White v. Wheeler*, 136 S. Ct. 456 (2015) (per curiam).  Our majority opinion also addressed and rejected petitioner's other claims relating to the guilt phase of the state trial proceedings, but left unresolved other claims relating to the penalty phase.  *See id.* at 375.  Both Wheeler and respondent Thomas Simpson ("Warden") filed petitions for certiorari.  The Supreme Court denied Wheeler's petition, *Wheeler v. White*, 136 S. Ct. 688 (2015), but granted the Warden's, reversing our decision to issue the writ and remanding for further proceedings, *White*, 136 S. Ct. at 462.  We now address petitioner's remaining claims certified for appeal.  After doing so, we affirm the judgment of the district court.

I.

In 2001, a jury convicted petitioner of two counts of intentional murder.  Petitioner's victims were Nigel Malone and his girlfriend, Nairobi Warfield.  The jury recommended a death sentence after finding one aggravating circumstance:  that petitioner's "act . . . of killing [was] intentional and resulted in multiple deaths[.]" Ky. Rev. Stat. § 532.025(2)(a)(6).  The trial court followed the jury's recommendation and imposed a death sentence for each conviction.  On direct appeal, the Kentucky Supreme Court made the following findings of fact:

> On October 2, 1997, Louisville police discovered the bodies of [Malone and Warfield] in the apartment the victims shared.  The male victim was found in a hallway near the bathroom.  He had suffered nine stab wounds.  Two stab wounds to the chest were considered the fatal wounds by the medical examiner.  She described the crime scene as having blood spatters on the floor, walls, furniture and appliances.  The medical examiner believed that the main struggle occurred in the kitchen and progressed to the hallway where the body of the male victim was found.

> The female victim died as a result of manual strangulation. The medical examiner testified that she believed the struggle between the female and her assailant occurred in the bedroom where she was found. The female victim had multiple abrasions on the left side of her neck and lacerations with a bruise on her mouth and several bruises on her lips. Her body was found in a seated position, leaning against a bedroom wall. She was covered with a blanket or quilt and a [pair of] scissors was protruding from her neck. The medical testimony determined that she had been stabbed with the scissors after she was already dead. During the autopsy, the medical examiner discovered that the female victim was pregnant.
>
> There was blood on the floors and walls in nearly every room in the apartment. Numerous blood samples were also collected at the scene and were subject to laboratory testing. No fingerprints were found on the scissors.
>
> Wheeler denied killing the two victims but he changed his story on several occasions. Originally, he denied ever being inside of the apartment on the night the murders occurred but then later admitted being in the apartment on that night. He claimed that Nigel Malone was already stabbed, but that he did not see Nairobi Warfield. He also asserts that the assailant was already inside the apartment and he and that person fought which was why he was wounded.

*Wheeler v. Commonwealth*, 121 S.W.3d 173, 178 (Ky. 2003). The court affirmed petitioner's convictions and sentences. *Id*. at 189. Following his direct appeal, petitioner sought post-conviction relief in the state courts, which was denied. *See Wheeler v. Commonwealth*, No. 2006-SC-000901-MR, 2008 WL 5051579, at *11 (Ky. Nov. 26, 2008) (unpublished).

Wheeler filed the instant petition for a writ of habeas corpus in 2009. A magistrate judge recommended granting the Warden's motion for summary judgment and denying the habeas corpus petition. The district court agreed with the magistrate judge and denied the petition. The district court granted a COA as to ten claims, and we later expanded the COA to include two additional claims.

Having previously decided petitioner's guilt-phase claims, and the Supreme Court having denied his certiorari petition, our decision regarding those claims is law-of-the-case. *See, e.g., Bowles v. Russell*, 432 F.3d 668, 676 (6th Cir. 2005), *aff'd,* 551 U.S. 205 (2007) ("[O]nce an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case.") (citation omitted). It also goes without saying that we cannot revisit petitioner's juror-bias claim, the Supreme Court having

reversed our holding as to that claim. We turn then to petitioner's remaining penalty-phase claims.

II.

The Antiterrorism and Effective Death Penalty Act of 1996 limits federal habeas review of state court proceedings and provides that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication is "contrary to" Supreme Court precedent under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite result]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Under the "unreasonable application" clause of § 2254(d)(1), habeas relief is available if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case[.]" *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008) (citations omitted). "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous," but rather "must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (citations omitted). That means

> even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was *so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement*.

*White v. Woodall*, ––– U.S. –––, 134 S. Ct. 1697, 1702 (2014) (emphasis added, citations, quotation marks, and alterations omitted). In short, the standard for obtaining federal habeas relief is "difficult to meet." *Id.* (citation omitted).

On appeal, we review "de novo a district court's legal conclusions and mixed questions of law and fact and review[] its factual findings for clear error." *Moore v. Mitchell*, 708 F.3d 760, 774 (6th Cir. 2013).

### III.

Petitioner first argues that the trial court improperly admitted evidence as to the availability of prison furloughs in the future. Specifically, petitioner asserts that, through this evidence, the jury was led to believe that "unless [it] imposed a sentence of death, [petitioner] might one day be released into the community on furloughs," which petitioner argues was "irrelevant speculation that unfairly tilted the evidence in favor of a death sentence in violation of [his] constitutional right to a reliable capital sentencing determination."

This claim is procedurally defaulted.

> A habeas petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.

*Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (citation omitted).

Petitioner acknowledges that he failed to raise this claim on direct appeal, asserting it for the first time in his state post-conviction proceeding. Thus, petitioner "fail[ed] to comply with [Kentucky's] procedural rule[,]" *id.*, namely that a post-conviction proceeding is not the place for a "convicted defendant to retry issues which could and should have been raised in the original proceeding, nor those that were raised in the trial court and upon an appeal considered by [the Kentucky Supreme Court]." *Thacker v. Commonwealth,* 476 S.W.2d 838, 839 (Ky. 1972). Consistent with this rule, the Kentucky Supreme Court declined to review the merits of this claim in petitioner's post-conviction appeal. *Wheeler*, 2008 WL 5051579, at *9 ("If Appellant wanted to challenge the [furlough] evidence presented at trial, he should have done so in his

direct appeal, not by means of a [post-conviction collateral proceeding]."). This is an independent and adequate state ground for denying review. *See Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999).

Nor has petitioner demonstrated cause and prejudice to excuse this default. In the district court, he asserted that his direct appeal counsel provided ineffective assistance in failing to raise this issue, and that this ineffective assistance amounted to cause and prejudice, but he does not do so in this court. Petitioner has therefore abandoned any argument regarding cause and prejudice. *See Post v. Bradshaw*, 621 F.3d 406, 427 (6th Cir. 2010). In this court, he argues that the claim should not be regarded as defaulted because the state court addressed the merits of the issue in addressing his post-conviction ineffective-assistance-of-trial-counsel claim. However, assuming we accept this argument, and assuming that the Kentucky Supreme Court's discussion can be read as a determination that the trial court properly admitted the evidence, Wheeler still has not shown that the admission of the evidence rendered the sentencing process uncertain and unreliable in violation of the Eighth Amendment. His reliance on *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) is misplaced.

IV.

Petitioner raises another claim related to evidence of furloughs. Specifically, he claims that his trial counsel was ineffective for introducing testimony that he had received furloughs during his previous incarceration. Petitioner argues that this testimony "suggest[ed] to the jury, . . . [that] the defendant could receive a furlough during which he could commit another violent crime" and "opened the door for the prosecution to utilize the furlough evidence to prejudice the jury, to play up [petitioner's] violent criminal history and failure to learn a lesson in prison, and to let the jury know it was possible [petitioner] could receive a furlough if sentenced to less than death." In its post-conviction decision, the Kentucky Supreme Court found trial counsel's introduction of this evidence was a strategic attempt to show that petitioner had previously been such a model prisoner that he received two furloughs, and was not ineffective assistance of counsel. *Wheeler*, 2008 WL 5051579, at *10.

The general standards governing a claim of ineffective assistance of counsel are set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate ineffective assistance of counsel, "[a] petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins*, 539 U.S. at 521 (citing *Strickland,* 466 U.S. at 687).

> In the context of a death sentence, the question of prejudice turns on "whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would conclude that the balance of aggravating and mitigating circumstances did not warrant death."

*Hill v. Mitchell*, 400 F.3d 308, 314 (6th Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). We conclude that petitioner has not shown that the Kentucky Supreme Court's conclusion that trial counsel was pursuing a reasonable strategy with regard to the furlough testimony was contrary to, or an unreasonable application of, *Strickland*.

At the penalty phase, petitioner's counsel introduced a variety of evidence intended to establish that petitioner had been a model prisoner during previous incarcerations, including evidence of furloughs. For example, petitioner's trial counsel introduced the testimony of Michael Cooper, an employee at the Luther Luckett Correctional Complex where petitioner had served a prior term of incarceration. Cooper testified that petitioner worked for him as a janitor in the Property Room and exhibited a "good work ethic" and required "very, very little supervision." Cooper testified he was not aware of any disciplinary action ever being taken against petitioner. According to Cooper, petitioner received two furloughs while incarcerated. Cooper added that he did not know whether prisons still offered furloughs, but believed that none had been granted "for several years," noting that such a grant was "extremely rare."

Petitioner's counsel also introduced the testimony of Robin Rawlings, who had recently worked as a Classification and Treatment Officer with the Department of Corrections and as a Probation and Parole Officer with the Commonwealth's Department of Justice. Rawlings

testified that, as an inmate, petitioner worked as a janitor in the administration building, which included the offices for the prison warden and the deputy warden. Rawlings indicated that she spoke with petitioner every day, and she was not aware of any complaints, conflicts, or problems from either the staff or other inmates regarding him. Rawlings also worked with petitioner within a small group setting to assist inmates with their chemical dependency issues. Prison life is "very regulated and dictated by rules[,]" according to Rawlings, and petitioner was a "model inmate."

Rawlings was also queried about furloughs. To that end, Rawlings testified that, based on the policy in place at the time she was employed at the prison, she was "positive" that petitioner would not be eligible for a furlough given his two murder convictions. On cross-examination, the prosecutor also asked Rawlings about furloughs:

> [PROSECUTOR]: Um, Ms. Rawlings, uh, as far as furloughs are concerned, there was a time when individuals who were convicted of murder were granted furloughs, is that correct?
>
> ROBIN RAWLINGS: Yes, sir, that's true.
>
> [PROSECUTOR]: Okay, and they changed the policy at some point, right?
>
> ROBIN RAWLINGS: Yes, they did.
>
> [PROSECUTOR]: Okay, and you can't, uh, tell this jury what the policy is going to be in the future, 20, 30 years? You don't know that, do you?
>
> ROBIN RAWLINGS: That's true, sir.
>
> [PROSECUTOR]: Okay, policies change?
>
> ROBIN RAWLINGS: Yes, they do.

The record indicates that, when introducing testimony about petitioner's prior furloughs, petitioner's trial counsel was attempting to obtain a sentence other than death for petitioner. For example, during closing arguments, petitioner's trial counsel stated:

> We're not saying that these people did not suffer or that their families do not continue to suffer. We are telling you that the death penalty is not your only option. If you find the mitigation, if you find any redeeming qualities, and there are some there, you should give him his life.

Testimony by Cooper and Rawlings showed that Wheeler worked well within the structured environment of prison during the time of his previous incarceration. Wheeler had already

admitted to being a convicted felon during his guilt-phase testimony. At the penalty phase, the prosecution introduced evidence that petitioner pleaded guilty to ten counts of robbery on November 20, 1991, for which he was sentenced to twenty years of imprisonment, and that, later, on August 13, 1998, petitioner was convicted for illegal possession of a controlled substance (cocaine), for which he received a sentence of one year.

In the context of this record, petitioner's counsel argued that petitioner suffered from a drug addiction but could otherwise thrive within the structured environment of prison life:

> When you think of these offenses, I would think of someone who's been in trouble all their lives, who's never been responsible, who's never been stable, who could never hold a job, who could never find someone to love him or care about him. But that's not what we found here in the case of Roger Wheeler. We have found someone who has been, at one time, responsible and capable and stable and able to work and able to contribute, and I think he can still contribute in the penitentiary.

Based on this record, we conclude that petitioner is not entitled to relief on his ineffective-assistance-of-trial-counsel claim. A petitioner has a constitutional right to present testimony during the penalty phase about his good behavior while incarcerated. *See Skipper v. South Carolina*, 476 U.S. 1, 4 (1986). That is what petitioner's trial counsel did. The furlough evidence took two forms: the model-prisoner mitigation testimony (e.g., Cooper's direct examination) and the furloughs-for-murderers testimony (e.g., Rawlings' cross-examination). Although the Kentucky Supreme Court cited the more positive furlough testimony as one of the reasons for affirming the admissibility of Rawlings' negative testimony, that does not negate the fact that the furloughs showed the trust petitioner had earned with prison officials, and that trial counsel had a reasonable strategy for introducing it. In *Campbell v. Bradshaw*, 674 F.3d 578, 588 (6th Cir. 2012), this court concluded that trial counsel was not ineffective for introducing the petitioner's entire incarceration record (including bad conduct while in custody) during the penalty phase of trial because it was "part of a strategic effort to be candid with the jury about Campbell's past in an effort to gain credibility and, ultimately, obtain a life sentence for Campbell." No prejudice resulted in that case because a mental health expert addressed the same information and the jury heard much of the negative information from other sources. *Id.* at 589. The same occurred here, and thus, the same result is warranted. Notwithstanding the furlough

testimony, the jury was aware that petitioner had served only a fraction of his twenty-year sentence from his prior convictions.

V.

Petitioner raises another ineffective assistance of counsel claim related to the furlough testimony. Specifically, petitioner argues that his counsel was constitutionally ineffective for failing to object when the prosecutor cross-examined Rawlings about the potential availability of future furloughs and when the prosecutor raised the furlough issue in closing arguments. We disagree.

Initially, as for his claim regarding his counsel's failure to object at oral argument, this claim is procedurally defaulted. Petitioner did not raise this claim in state court, and consequently the Kentucky Supreme Court's decision was silent on the issue. *See Wheeler*, 2008 WL 5051579. Under Kentucky's rules of criminal procedure, petitioner had three years "after the judgment [became] final" to raise this issue. *Roach v. Commonwealth*, 384 S.W.3d 131, 135 (Ky. 2012) (explaining Ky. R. Cr. 11.42(10)). That time has now passed. Accordingly, petitioner has procedurally defaulted this claim. *See Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) ("[A] claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.").

Nor is habeas relief appropriate on petitioner's claim regarding his counsel's failure to object during Rawlings' cross-examination. This claim is not procedurally defaulted because petitioner raised it in his state post-conviction relief proceedings. However, petitioner cannot show deficient performance or prejudice arising from his trial counsel's failure to object to the prosecution's cross-examination of Rawlings. The Kentucky Supreme Court rejected the claim, observing that the information contained within Rawlings' testimony was accurate and not misleading, and trial counsel was accordingly not ineffective for failing to object to it. *Wheeler*, 2008 WL 5051579, at *10. The court further found that because petitioner introduced the furlough evidence in mitigation, the prosecutor was allowed to challenge it. *Id*. Petitioner's concern about the speculative nature of Rawlings' testimony is also unavailing. In *California v.*

*Ramos*, 463 U.S. 992, 1004 (1983), the Supreme Court rejected a similar argument—that a jury should not be instructed that a governor has the power to commute a sentence of life without parole as speculative and misleading—because the instruction in question "gives the jury accurate information of which both the defendant and his counsel are aware, and it does not preclude the defendant from offering any evidence or argument regarding the Governor's power to commute a life sentence." (footnote omitted). The same is true here.

VI.

Petitioner also challenges the penalty-phase jury instructions, alleging that they violated *Mills v. Maryland*, 486 U.S. 367 (1988), by improperly instructing jurors that they were required to be unanimous regarding the presence of mitigating factors. This issue was raised on direct appeal, and the Kentucky Supreme Court found no constitutional error. *Wheeler*, 121 S.W.3d at 188–89.

"The Constitution forbids imposition of the death penalty if the sentencing judge or jury is 'precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.'" *Henness v. Bagley*, 644 F.3d 308, 328 (6th Cir. 2011) (quoting *Smith v. Spisak*, 558 U.S. 139, 144 (2010)). "A challenge to a jury instruction is not to be viewed in 'artificial isolation,' but rather must be considered within the context of the overall instructions and trial record as a whole." *Hanna v. Ishee*, 694 F.3d 596, 620–21 (6th Cir. 2012) (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). "To warrant habeas relief, 'jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. The burden is even greater than that required to demonstrate plain error on appeal.'" *Buell v. Mitchell*, 274 F.3d 337, 355 (6th Cir. 2001) (quoting *Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir. 2000)).

Petitioner's claim lacks merit. Essentially, petitioner's argument is that because the trial court instructed the jurors that their verdict had to be unanimous, but was silent in instructing them about unanimity as applied to mitigating factors, the jurors must have inferred that their mitigating-factor determinations must also be unanimous. However, "failing to expressly state

that mitigating factors need not be unanimously found does not improperly imply that mitigating factors must be unanimously found." *Williams v. Anderson*, 460 F.3d 789, 808 n.5 (6th Cir. 2006). Here, the trial court used the word "unanimous" only once, to explain that the verdict must be so: "The verdict of the jury must be in writing, must be unanimous, and must be signed by one of you as Foreperson." The verdict form required only that the jury find an aggravating circumstance to recommend the death sentence. Requiring a unanimous verdict as to the sentence is not unconstitutional. *See Moore*, 708 F.3d at 794. Accordingly, although the Kentucky Supreme Court's decision did not refer to *Mills*, its finding of no constitutional error was not contrary to, nor would it have been an unreasonable application of, *Mills*. *See Slagle v. Bagley*, 457 F.3d 501, 513–14 (6th Cir. 2006) (citation omitted) (holding that a state court in its decision need not cite or be aware of relevant Supreme Court cases so long as its reasoning and result are consistent with them).

### VII.

Next, petitioner claims that several statements by the prosecutor during the penalty phase amounted to misconduct. Specifically, petitioner claims that the prosecutor made constitutionally impermissible statements when referring to petitioner's evidence of his struggles with substance abuse as "excuses" and when allegedly offering his personal opinion about the case and petitioner's decision to present mitigation testimony from his thirteen-year-old son. He alleges that these statements denied him a fundamentally fair trial in violation of his constitutional due process rights. We disagree.

A petitioner faces a high bar when bringing claims of prosecutorial misconduct. "For the prosecutor's misconduct to violate the defendant's due process rights, it 'is not enough that the prosecutor's remarks were undesirable or even universally condemned'; instead those comments must 'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Beuke v. Houk*, 537 F.3d 618, 646 (6th Cir. 2008) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). Indeed, "[t]he prosecution . . . has 'wide latitude' during closing argument to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009) (quoting *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008)).

Petitioner is not entitled to relief on these claims. The wide latitude afforded to prosecutors was properly exercised here. The prosecution did not tell the jury not to consider Wheeler's mitigation testimony, but rather questioned the weight to be given to it. To the extent that either comment approached the bounds of permissible closing argument, the Kentucky Supreme Court's decision that they did not cross the line into a constitutional violation was not contrary to, or an unreasonable application of, clearly established federal law. *Wheeler*, 121 S.W.3d at 189; 28 U.S.C. § 2254(d)(1); *Beuke*, 537 F.3d at 646.

VIII.

Petitioner also claims that Kentucky's proportionality review violates the Eighth Amendment and denied him due process. Specifically, petitioner argues that Kentucky's proportionality review is unconstitutional because it only incorporates cases in which the death sentence was imposed and thus results in an arbitrary application of death sentences. We disagree. As this court previously explained in *Bowling v. Parker*:

> The Supreme Court has held that the Constitution does require proportionality review, but that it only requires proportionality between the punishment and the crime, not between the punishment in this case and that exacted in other cases. *See Pulley v. Harris*, 465 U.S. 37, 50 (1984). Although "[t]here is no federal constitutional requirement that a state appellate court conduct a comparative proportionality review," *McQueen v. Scroggy*, 99 F.3d 1302, 1333–34 (6th Cir. 1996), *cert. denied,* 521 U.S. 1130 (1997), Kentucky law does require the Kentucky Supreme Court to engage in comparative proportionality review. *See* Ky. Rev. Code Ann. § 532.075(3)(c). Although claimed violations of state law are generally not cognizable on habeas, the Supreme Court has left room for the argument that a state-law error could, potentially, "be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment." *Harris*, 465 U.S. at 41.

344 F.3d 487, 521 (6th Cir. 2003) (parallel citations omitted). The *Bowling* court expressed skepticism over whether § 532.075(3)(c) created a due process interest, noting that "the statute only explains what the Kentucky Supreme Court needs to consider—similar cases, the crime, and the defendant—it does not tell that court how to make this decision. This suggests . . . that no due-process right exists" pursuant to § 532.075(3)(c). *Id.* at 521–22.

Petitioner attempts to distinguish this case from *Bowling,* arguing that it "considered only a due process argument and merely noted that proportionality review is not required in light of *Harris*" but did not address what petitioner calls "threshold" statutes. According to petitioner, "*Gregg* [*v. Georgia*, 428 U.S. 153 (1976),] and [*Zant v.*] *Stephens*, [462 U.S. 862 (1983),] require jurisdictions with 'threshold' statutes to consider in proportionality review cases where the death penalty was not imposed." Petitioner defines "threshold statutes" as akin to "Georgia's and Kentucky's statutes that permit juries to impose death as long as an aggravator is found and mitigation considered." The Supreme Court in *Harris*, however, saw things differently:

> While emphasizing the importance of mandatory appellate review under the Georgia statute, [*Stephens*], 103 S. Ct., at 2742, we did not hold that without comparative proportionality review the statute would be unconstitutional. To the contrary, we relied on the jury's finding of aggravating circumstances, not the State Supreme Court's finding of proportionality, as rationalizing the sentence. Thus, the emphasis was on the constitutionally necessary narrowing function of statutory aggravating circumstances. Proportionality review was considered to be an additional safeguard against arbitrarily imposed death sentences, but we certainly did not hold that comparative review was constitutionally required.
>
> There is thus no basis in our cases for holding that comparative proportionality review by an appellate court is required in every case in which the death penalty is imposed and the defendant requests it. Indeed, to so hold would effectively overrule *Jurek* [*v. Texas*, 428 U.S. 262 (1976),] and would substantially depart from the sense of *Gregg* and *Proffitt* [*v. Florida*, 428 U.S. 242 (1976)]. We are not persuaded that the Eighth Amendment requires us to take that course.

465 U.S. at 50–51 (footnote omitted). Because petitioner offers no Supreme Court precedent supporting his notion that the Kentucky Supreme Court should have compared his case to cases in which the death penalty was not imposed, we conclude he is not entitled to relief on this claim.

IX.

For the foregoing reasons, we conclude that petitioner is not entitled to habeas relief on any of his claims. We therefore affirm the judgment of the district court.

---

**CONCURRENCE**

---

MERRITT, Circuit Judge, concurring. I continue to believe that the Ohio acquittal-first jury instructions in this case and many others are highly confusing. It could easily lead one or more jurors to believe that they may not excuse the defendant from the death penalty and impose life imprisonment unless they first acquit the defendant when weighing aggravators and mitigators. I have set this argument out in detail several times, most recently in a majority opinion, *Mitts v. Bagley*, 620 F.3d 650, 656-58 (6th Cir. 2010), *rev'd sub nom. Bobby v. Mitts*, 563 U.S. 395 (2011); but as this citation indicates, the Supreme Court did not agree. Of course, I am now bound to follow the Supreme Court holding even though I believe its result and its reasoning are wrong.